NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| NIKOLETTE ADAMS, | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | |
| v. | : | Civil Action No. 06-2638 |
| INTERARCH, INC. | : | **OPINION** |
| Defendant. | : | |

Plaintiff Nikolette Adams ("Adams" or "Plaintiff") was hired as an administrative assistant by Defendant Interarch, Inc. ("Interarch" or "Defendant") in April 2002. She was terminated on October 25, 2005, on the same day that she returned from sick leave allegedly for Reflex Sympathetic Distrophy ("RSD"). Plaintiff alleges that she was terminated in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 et seq. ("ADA"). Interarch moves for summary judgment pursuant to Fed.R.Civ.P. 56. The Court has considered the written submissions[1] of the parties and heard oral argument on October 23, 2008. For the reasons that follow, in addition to those expressed on the record during oral argument, Interarch's motion for summary judgment is denied.

## I. Procedural History and Factual Background

In April, 2002, Plaintiff was hired by Defendant as an executive assistant to both Ms. Hill ("Hill") and Mr. Simmons ("Simmons"), the President and Vice-President of Interarch,

[1]The Court has reviewed the moving and opposition brief. Interarch did not submit a brief in reply.

respectively. (Simmons Dep. at 3-4; Hill Dep. at 4, 10-11) Her duties were later increased to include assisting the Studio Director, Scott Hite ("Hite"), and the Construction Manager, John Bickel, and she also functioned as the Office and Operations Manager. (Adams Dep. at 23-24; Hill Dep. at 20, 27-28) Hill testified that Adams's responsibilities were increased in response to Adams's request for higher pay; they increased her salary upon her acceptance of additional duties. (Hill Dep. at 20) In September, 2004, Plaintiff claims that she was diagnosed with RSD notified Defendant that she would need three to four weeks off per doctor's orders. (Adams Dep. at 43; Simmons Dep. at 30-31) In early October of 2004, Defendant allegedly began searching for viable replacements for Plaintiff. (Simmons Dep. at 28-29; Adams Dep. at 63-64; Ex. H, Career Builder posting) On October 25, 2004, Plaintiff returned to work and was informed she had been terminated from employment. (Adams Dep. at 12-13, 115).

Defendant claims that Adams was terminated due to a reallocation of job responsibilities within Interarch, due to her repeated absenteeism, which preceded any alleged disabilities, and due to her position being eliminated. (Hill Dep. at 80; Adams Dep. at 12-13, 115; Simmons Dep. at 31) Defendant acknowledges that it knew Adams has RSD, but it did not perceive that illness to be a disability as defined by the ADA. Interarch also states that it did not believe Adams had RSD. In this motion, Defendant argues that Plaintiff fails to establish a *prima facie* case for two reasons: (1) she does not meet the definition of "disabled" under the ADA; and (2) she was not fired due to her alleged disability.

## II. Discussion

### A. Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c). An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Id. Consequently, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

The basic framework of summary judgment places the initial burden of demonstrating the absence of a genuine issue of material fact upon the moving party. Celotex Corp., 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or

vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322.

**B. Claims Under The ADA**

The ADA prohibits discrimination by covered entities, including private employers, against qualified individuals with a disability. 42 U.S.C. § 12112(a). To resolve claims of employment discrimination, the Third Circuit utilizes the analytical framework pronounced in McDonnell Douglas Corp. v. Green, 441 U.S. 792 (1973). See Olson v. General Electric Astrospace, 101 F.3d 947, 951 (3d Cir. 1996). Pursuant to McDonnell Douglas, the plaintiff bears the initial burden of establishing a *prima facie* case of unlawful discrimination. In order to establish a *prima facie* case of disability discrimination under the ADA, a plaintiff must prove that:

> (1) he has a "disability" within the meaning of the Act; (2) he is "otherwise qualified" to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that he has suffered an adverse employment action.

Williams v. Philadelphia Hous. Auth. Police Dep't, 380 F.3d 751, 761 (3d Cir.2004).

Under the burden shifting paradigm, if the plaintiff is successful in establishing the *prima facie* case, the defendant must articulate a legitimate nondiscriminatory reason for the adverse employment action. McDonnell Douglas, 411 U.S. at 803. Plaintiff must then demonstrate that the proffered reason is a pretext for discrimination by proof of background factors such as general policy and hiring statistics. Id. at 804-05.

Interarch claims Plaintiff has failed to make a *prima facie* showing of discrimination because she is not "disabled" as defined by the ADA. Alternatively, if Plaintiff qualifies as disabled under the ADA, Interarch insists that she was terminated for a legitimate nondiscriminatory reason that had nothing to do with her disability. Plaintiff claims that there is direct evidence of discrimination and that the burden shifting paradigm does not apply.

1. Prima Facie Case of Discrimination

Whether a person has a disability as defined by the ADA is an individualized inquiry. Bragdon v. Abbott, 524 U.S. 624, 641-642 (1998) (declining to opine on whether HIV infection qualifies as a per se disability under the ADA); 29 CFR pt. 1630, App.§ 1630.2(j) ("The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual"). The ADA defines "disability" to be one of three things: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2)(emphasis added). Adams does not argue that RSD is a recognized disability under the ADA. Rather, she claims that Interarch regarded her as unable "'to perform in a wide range of jobs' due to perceived unreliability". Pl. Opp. Br. at 18. There is a genuine issue of material fact as to whether Interarch regarded Plaintiff as disabled precluding summary judgment.

a. There is a Genuine Issue of Fact as to Whether Adams Qualifies as Disabled under the ADA.

In order for an individual to prove that she is "regarded as" under the ADA she must show that either:

> (1) a covered entity mistakenly believes that [he] has a physical [or mental] impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual–it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.

Sutton v. United Air Lines Inc., 527 U.S. 471, 489 (1999)(A plaintiff must show that defendant "mistakenly believed that [she had] a physical impairment that substantially limits one or more major life activities" or "mistakenly believed that an actual non-limiting impairment substantially limits one or more major life activities." ) It is not enough that Interarch perceived Adams to be impaired; the standard is whether Interarch thought she was disabled "within the meaning of the statute." Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 381 (3d Cir. 2002). For this reason, the illness must be regarded as a permanent condition, as illnesses and diseases of short duration, or temporary conditions, are not protected by the ADA. Id. at 381 (where an entity regards an employee as being afflicted with a temporary condition, such as pneumonia, the employee is not regarded as disabled under the ADA.)

However, where an employer "misinterpret[s] information about an employee's limitations to conclude that the employee is incapable of performing a wide range of jobs' the employee is regarded as disabled under the ADA." Id. (quoting Taylor, 177 F.3d at 187 (internal quotations omitted)). The definition of "substantially limited" remains the same

for a "regarded as" disabled plaintiff under the ADA. See Tice v. Centre Area Transp. Authority, 247 F.3d 506, 514 (3d Cir. 2001). The Equal Employment Opportunity Commission defines "substantially limits" as "[u]nable to perform a major life activity that the average person in the general population can perform." 29 C.F.R. § 1630.2(j)(1)(I). "[M]ajor life activities" are "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I). In addition, "substantial limitation" has been interpreted to include the inability to regularly attend work. Hicks v. The Tech Industries, 512 F.Supp.2d 338, 355-356 (W.D.Pa. 2007)(Where an employee is regarded as "having an impairment that foreclosed his ability to regularly and reliably attend work- a restriction that would preclude success in almost any position or class of jobs. . . the employee was "regarded as" disabled under the ADA); see, also, Young v. Bank of Boston Connecticut, 1995 WL 908616, *6 (D.Conn., 1995) (stating that an employee who is regarded as unable to regularly attend work would be "foreclosed from success in any position," and thereby substantially limited in the major life activity of working).

Interarch states that it regarded Adams as having RSD, which is a temporary condition, and, by Adams's own admission in her emails, was in remission upon her return to work. During oral argument and in its brief, Interarch also stated that it did not believe Adams when she said she had RSD; it believed it to be just another excuse to be absent from work, consistent with her prior history of absenteeism and leaving early. The latter argument can cut both ways and highlights the problem of this case: what did Interarch believe about Adams's medical condition?

On one hand, if Interarch's evidence of Adams's unreliability is to be believed, then its perception of Ms. Adams's illness and its prospective effect on her ability to regularly attend work can be given credence. On the other hand, if Interarch did not believe Adams had RSD, then what did it perceive the illness to be- if anything at all? Arriving at an answer to this question is challenging given that Interarch's own attendance records undermine the deposition testimony regarding Adams's attendance/reliability, that Adams was fired on the same day that she returned to work, and that there are shifting reasons given to justify her termination.[2] Interarch either believed Adams had RSD or it did not- or it believed she had a more serious condition.

For these reasons, the district court's decision in Hicks is persuasive in this case. There summary judgment was denied on grounds that a reasonable jury could conclude that the defendant regarded the plaintiff as disabled because plaintiff was perceived as unreliable due to a medical condition. Hicks missed time from work over the course of five years for blood clots and colon cancer. He filed several claims of discrimination against his employer alleging that the proffered reason for his termination- attendance- was a pretext for discriminatory animus. In the ADA portion of the case, the court stated:

---

[2]The fact that Interarch terminated Plaintiff upon her return to work distinguishes this case from Rinehimer, where the plaintiff was afflicted with pneumonia. 292 F.3d 375. In Rinehimer, the doctor's note authorizing the plaintiff's return to work conditioned the return upon precautions limiting his exposure to dust and fumes. Id. at 379. When the plaintiff returned to work, he was reassigned duties but his salary remained the same. Id. The Third Circuit identified the fact that the employer reassigned him to another position as an indicator that it believed plaintiff was capable of performing other tasks and was not foreclosed from preforming any task due to his disability. Id. That indicator is lacking in this case as Plaintiff was terminated without a possibility of reassignment.

> I find that the record evidence demonstrates that there is a genuine issue of material fact on this question. For example, Stringi, testifying as Defendant's 30(b)(6) witness, stated that he decided to terminate Plaintiff's employment for unreliability due to his attendance problems. Those attendance issues included numerous medical absences related to Plaintiff's colon cancer and related conditions. I also find it noteworthy that although Plaintiff had been warned about absenteeism and tardiness issues throughout his career, Defendant did not discharge him until after his long absence due to his cancer and several related medical absences and tardiness incidents following his return to work. Plaintiff also has pointed to documentary evidence (performance recognitions, file memos, etc.) expressing concern about Plaintiff's health-related absences. Viewing the facts in the light most favorable to Plaintiff, a reasonable jury could conclude that Defendant regarded him as having an impairment that foreclosed his ability to regularly and reliably attend work-a restriction that would preclude success in almost any position or class of jobs. See, e.g., Young v. Bank of Boston Conn., Civil No. 3:93CV1642 (AVC), 1995 WL 908616, at *6 (D.Conn. Mar. 31, 1995).

Giving Plaintiff all favorable inferences, the timing of her firing and the fact that Interarch did not offer her any other positions, there is a question as to whether Interarch believed Adams's impairment substantially limited one or more major life activities establishing a *prima facie* case of discrimination under the ADA. As in Hicks, "a reasonable jury could conclude that Defendant regarded [Adams] as having an impairment that foreclosed [her] ability to regularly and reliably attend work- a restriction that would preclude success in almost any position or class of jobs." 512 F.Supp.2d at 355-356. As a result, summary judgment is denied on this ground.

b. There Is a Genuine Is of Fact as to Whether Plaintiff Was Otherwise Qualified.

There is a question about Adams's qualifications for the position she held. As previously stated above, Interarch consistently increased Adams's responsibilities from the time she was hired. In an attempt to undercut the relevance of the additional duties to her qualifications, Interarch states that the reason for the additional duties was to justify

Adams's demands for a higher salary; Hill stated that conferring Adams with additional responsibilities and a commensurate salary bore no relationship to her qualifications for the job. Hill Dep. at 20. Given that this issue turns on credibility, summary judgment is inappropriate on this ground.

c. There is a Genuine Issue of Fact as to Whether Interarch Fired Plaintiff Because of That Disability.

There is a genuine issue of fact related to the reason underlying Plaintiff's termination. The reasons expressed during depositions are varied and inconsistent with the Defendant's own attendance records. For example, Plaintiff points to the testimony of several Interarch managers who cite unreliability and absenteeism as the basis for her termination. Shirley Hill testified that "basically, the job was changing, and we offered [Ms. Adams] what we thought was a good severance and basically we were tired of all her unresponsible (sic) behavior, her unreliability." (Hill Dep. at 80) In addition, Ms. Hill stated that Adams was "never healthy . . .[b]ecause she was out all of the time . . ., [s]he had migraines or - I mean, her record of employment was very unstable and erratic as far as showing up . . . [a] lot of sickness . . . ." (Hill Dep. at 24) Ms. Hill also handwrote comments on Adams's performance self review: "Happy- Healthy." (Ex. C)

Mr. Simmons testified that Adams's attendance was "sporadic" due to personal problems, the fact that her family only had one car, her participation in the local theater, and various health issues. (Simmons Dep. at 11) Simmons, Hill, and Hite were aware that the reason for Adams's leave of absence was RSD. (Hill Dep. at 58-62; Simmons Dep. at 25-26 (noting that Adams was out due to a circulatory problem with her leg); Hite Dep. at 17) Mr. Hite cited absenteeism as the basis for Adams's termination. (Hite Dep. at 54).

It was Mr. Simmons who notified Adams of her termination. However, what is clear from the above testimony is the sentiment of Adams's other supervisors who regarded her as unreliable due to her sporadic attendance.[3] Hill stated that Adams "was the last person in from a snow storm. . . [t]here was a thought of what would be next." (Hill Dep. at 26) However, the attendance records in this case do not bear out excessive absenteeism. In fact in 2004, Adams has several sick days still available to her at the time she is fired. Ex. D. The attendance records, kept by the accounting department (for absences, lateness and leaving early) indicate that Adams missed 11 days taken as vacation and 3 days for illness during 2004. There are no indications that she left early or arrived late based upon Interarch's official attendance records. Mr. Simmons tried to explain this as follows: Ms Adams "took quite a few more days, but that she conceivably had gone in and doctored the records herself. . . like Ferris Bueller did in his movie." Simmons Dep. at 16-17.

While there is evidence in the record to suggest that Adams was unreliable and that her attendance and punctuality were of concern- for reasons other than medical absences,

---

[3]Adams eludes to this reputation in a letter she wrote in August 2003, explaining one of her absences:

> I am sorry I missed Monday and Tuesday of last week due to the flu; please be assured that the time is already being made up. All of the other days I've taken since the beginning of the year have been made up as well, as I explained to you vie email last month. . .
> . . . . I am also sorry that your perception has been that I put theater before my job. . . Please be aware that I spend more hours and more energy at Interarch on a weekly basis than I do for my family or for any outside activities. . . My work weeks have typically been 45 hours- even giving (sic) the time that I've missed, this has been the case as that time was made up. . .I often cannot work late into the evening because I do have other obligations, so I will adjust on the early side when I can't work on the late side. . Ex. G, Ex. 2 to Adams Dep.

This letter was written a full year before Adam's took leave for RSD.

the attendance records do not comport with these perceptions, are inconsistent, and the timing of the termination is suspect. Thus, construing the facts in a light most favorable to Adams, there is a factual question regarding the legitimacy of the proffered reason for Plaintiff's termination and summary judgment is denied on this ground.

2. The Remainder of the McDonnell Douglas factors.

Defendant has proffered a nondiscriminatory reason for terminating Plaintiff. Under the McDonnell Douglas framework, Plaintiff is required to identify evidence that this reason is pretextual. 411 U.S. at 804-805. Plaintiff has met this burden, as there is evidence in the record that demonstrates shifting reasons for her termination.[4] In addition, on one of Plaintiff's performance reviews Ms. Hill noted that Plaintiff was "Happier--Healthy". Pl. Ex. C. Ms. Hill described Adams during her deposition as "never healthy". Hill Dep at 24. In deposition, Adams stated that Mr. Hite directed her to post a position on Career Builder for a position held by an Interarch employee on leave for workers' compensation. Adams Dep at 38. According to Adams, Hite said if the employee came back to work, they would "fire her for something else." Id. at 38-39. Adams has also produced a printout of a posting on Career Builder that seeks someone to fill duties similar to her own. Ex. H. And Mr. Hite confirmed that he gave input regarding that posting. Hite Dep. at 46-47.Giving Plaintiff all reasonable inferences, there is enough evidence in the record to challenge Interarch's

[4]As Interarch correctly points out, absenteeism is an appropriate reason for termination. However, there is a factual dispute regarding the pervasiveness of Plaintiff's absenteeism. In addition, Interarch relies on Kelly v. Drexel Univ., 94 F.3d 102 (3d Cir. 1996) where the plaintiff's position was eliminated for budgetary reasons. As in Kelly, Interarch also proffers that Adams's position was being restructured or eliminated. This allegation is challenged by the posting on Career Builder which seeks to account for at least some of the duties assigned to Adams.

proffered reason for terminating Plaintiff as a pre-text for discrimination.

3. Direct Evidence of Discrimination

The burden shifting paradigm of McDonnell Douglas does not apply in cases where there is direct evidence of discrimination. Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). Here, Plaintiff was fired the day she returned from leave. There is evidence that her managers thought she was both unreliable and unhealthy. If a reasonable jury concludes Interarch regarded her as disabled, then there would be direct evidence of discrimination.

## III. CONCLUSION

Defendant would be within the bounds of law if it fired Plaintiff for absenteeism even if she was afflicted with an illness or impairment as long as Defendant did not believe that affliction substantially limited a major life activity. And it may be that Defendant did not believe that Plaintiff had such an impairment. But on this record, there are genuine issues of fact precluding summary judgment. An appropriate Order shall issue herewith.

Date: December 18, 2008

/s/ Joseph H. Rodriguez
Hon. Joseph H. Rodriguez,
UNITED STATES DISTRICT JUDGE